UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES OF AMERICA, )
)
      Plaintiff, )  Case No.: 2:16-cr-00265-GMN-NJK
 vs. )
)  **ORDER**
PASTOR PALAFOX, *et al.*, )
)
      Defendants. )
)

  Pending before the Court is the Motion in Limine for Evidentiary Hearing to Establish and End the Government's *Napue* Violations, (ECF No. 1855), filed by Defendant Pastor Palafox ("Defendant Palafox"). The Government filed a Response, (ECF No. 1875), and Defendant Palafox filed a Reply, (ECF No. 1878). For the reasons discussed below, Defendant Palafox's Motion in Limine, (ECF No. 1855), is denied.

**I. BACKGROUND**[1]

  On September 12, 2019, the Government called Gary "Jabbers" Rudnick as its witness. (*See* Mins. of Proceedings, ECF No. 1832). On September 18, 2019, during direct examination, prosecutor John Han asked Rudnick whether he met Mr. Mark Fleming, counsel for Defendant Albert Lopez. (Tr. 43:1–2, ECF No. 1853). Rudnick responded, "No, I did not." (*Id.* 43:3). The Government's direct examination of Rudnick concluded and Mr. Fleming was the first defense attorney to question Rudnick. (*See* Mins. of Proceedings, ECF No. 1852). Mr. Fleming then asked whether Rudnick had a face-to-face meeting with Mr. Fleming, and his investigator, Mr. Scott Bakken, on November 28, 2017, at a Starbucks in California. (*See, e.g.*, Tr. 52:9–54:12, ECF No. 1853). Rudnick denied that a face-to-face meeting took place. (*Id.*

---

[1] The parties are familiar with the facts in this case and the Court will not repeat them here except where necessary.

54:13) (Rudnick responding, "I never met with you."); (*id.* 54:18) (same). When pressed on this matter, Rudnick continued to assert that he did not meet with Mr. Fleming and Mr. Bakken on November 28, 2017. (*Id.* 54:24) (Rudnick stating, "I never sat down with you and met with you."); (*Id.* 63:4) (Rudnick stating, "I didn't even meet with you."). Mr. Fleming also asked Rudnick if he had previously told Mr. Fleming that Defendant Lopez was never part of a conspiracy to kill Mr. Pettigrew, and that Mr. Pettigrew's death was the result of a bar fight that got out of control. (*See id.* 53:6–56:19). Rudnick denied making such statements to Mr. Fleming. (*Id.*).

Eventually, Mr. Fleming asked: "Isn't it a fact that . . . you've been granted immunity in exchange for your testimony?" (*Id.* 83:16–17). The Government objected, arguing a lack of good-faith basis. (*Id.* 84:4–5). Subsequently, outside the presence of the jury, the Government confirmed that Rudnick had not been granted immunity and that he had not been appointed an attorney to explain the implications of testifying under oath. (*See id.* 87:13–89:16). After hearing from the parties, the Court appointed counsel for Rudnick and recessed so that Rudnick could have an opportunity to consult with his attorney. (*See id.* 91:5–11); (*see also* Tr. 97:6–18, ECF No. 1854).

The following day, during the early morning hours of September 19, 2019, Defendant Palafox filed the instant Motion in Limine for Evidentiary Hearing to Establish and End the Government's *Napue* Violations, (ECF No. 1855). During proceedings later that morning, Rudnick's counsel informed the Court that an immunity agreement had been reached and that the agreement "is limited to use immunity for [Rudnick's] testimony relating to the VICAR murder." (Tr. 8:24–9:4, ECF No. 1859). In addition, Rudnick's counsel indicated:

> I believe now, . . . that what Mr. Rudnick is going to say is that when he—and I'm making an attorney proffer now, Your Honor. *When he denied a meeting with Mr. Fleming and Mr. Bakken, that that was not truthful; that there was, in fact, a meeting.* I believe, again, by way of attorney proffer, that he had

consistently denied that meeting to the government, although I was not privy, obviously, to their meetings.

(*Id.* 9:14–22) (emphasis added).  The Government then orally moved to strike Rudnick's testimony in its entirety. (*Id.* 20:17–19).  The Court denied the Government's motion to strike subject to further briefing from the parties. (*See* Tr. 74:20–76:7).

At that time, the Court also heard from Rudnick's counsel, who expressed concerns about having Rudnick provide additional testimony because doing so could expose Rudnick to liability under 18 U.S.C. § 1001 (prohibiting, *inter alia*, omitting material facts, making materially false statements to federal agents, officials). (*See id.* 39:16–40:19).  The Court indicated that Rudnick could properly assert his Fifth Amendment right against self-incrimination in response to questions designed to elicit whether Rudnick committed a § 1001 offense (*e.g.*, whether Rudnick lied to federal agents regarding the face-to-face meeting with Mr. Fleming and Mr. Bakken). (*Id.* 43:17–22).  The Court also explained that the subject of what was spoken during the meeting with Mr. Fleming and Mr. Bakken was appropriate for cross-examination. (*See, e.g.*, *id.* 36:17–20, 39:5–23, 43:23–44:5).

To further address the concerns noted by Rudnick's counsel, the Government stipulated to present a statement to the jury in order to correct the record without having Rudnick admit that he made false statements to federal agents.  The jury was brought into the courtroom and Mr. Han presented the following statement: "The government agrees and stipulates that on November 28th of 2017, Gary Rudnick had a face-to-face meeting with Defense Attorney Mark Fleming and Mr. Scott Bakken which last[ed] over two hours." (Tr. 78:14–18, ECF No. 1859).  Cross-examination resumed and Rudnick asserted his Fifth Amendment privilege in response to a number of questions.  Rudnick's testimony concluded on September 24, 2019.  On September 27, 2019, the Government filed a Response, (ECF No. 1875), to the instant Motion in Limine

for Evidentiary Hearing, (ECF No. 1855). Defendant Palafox filed a Reply, (ECF No. 1878), on September 30, 2019.

## II. **DISCUSSION**

Defendant Palafox asserts a claim under *Napue v. Illinois,* 360 U.S. 264 (1959), based on the Government's alleged failure to correct Rudnick's "false testimony denying he ever met Defense Counsel Mark Fleming and Former FBI Agent and defense investigator Scott Bakken[.]" (*See* Mot. in Lim. ("Mot.") 8:10–21, ECF No. 1855). Defendant Palafox asks that the Court "find a *Napue* violation and hold an evidentiary hearing to establish the extent of the government's complicity[.]" (*Id.* 10:28–11:5).

A criminal defendant's due process rights are violated when the government knowingly introduces false evidence or fails to correct the record when false evidence is presented. *Napue,* 360 U.S. at 269–70; *Mooney v. Holohan,* 294 U.S. 103 (1935); *Hayes v. Brown,* 399 F.3d 972, 974, 978 (9th Cir. 2005) (en banc). To prevail on a claim under *Napue*, a defendant must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Hayes*, 399 F.3d at 984 (internal quotation marks and alteration omitted); *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003). "[T]he prosecution's failure to correct false testimony requires a new trial only if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Maxwell v. Roe*, 628 F.3d 486, 499–500 (9th Cir. 2010) (internal punctuation and quotation marks omitted) (quoting *Hayes*, 399 F.3d at 984–85).

Here, Defendant Palafox argues that the Government knew or should have known that Rudnick's testimony was false.[2] (Reply 4:24–25, ECF No. 1878). To support his argument, Defendant Palafox relies on a December 15, 2017 discovery demand letter, (ECF No. 527-1),

---

[2] The parties do not dispute that Rudnick's September 18, 2019 testimony denying a November 28, 2017 face-to-face meeting with Mr. Fleming and Mr. Bakken was false. Thus, the Court need not analyze the first element of a Napue claim—that is, whether Rudnick's testimony was "actually false." *See Hayes*, 399 F.3d at 984.

written by Mr. Fleming and addressed to the prosecutors then-assigned to this case. (Mot. 5:16–23).  In the letter, "Mr. Fleming informed government prosecutors that he and members of Mr. Lopez's defense team had conducted an extensive interview with Rudnick, during which he again stated that his story about a murder conspiracy was false and manufactured so that he could avoid full responsibility for his criminal acts." (*Id.*).  Additionally, Defendant Palafox notes that during Defendant Lopez's detention hearing on August 2, 2018, Mr. Fleming stated, *inter alia*, that he and Mr. Bakken had "[driven] to where Gary Rudnick lives" and "met" Rudnick. (Reply 1:25–2:10); (Mins. of Proceedings, ECF No. 745); (Tr. 71:12–72:24, ECF No. 1119).

Defendant Palafox also points to Mr. Fleming's August 12, 2019 opening statement where he made the following representations:

> Of all of the attorneys here, I think I'm the only one that actually had a chance to sit down for about three hours and meet with Gary Rudnick.  That was in November of 2017 when we were investigating these charges, and I never said—I never said a word to Gary Rudnick without being accompanied by my FBI—former FBI investigator, . . his name is Scott Bakken, . . .  So Scott and I went—we actually spoke with Gary Rudnick.

(Tr. 129:4–13, ECF No. 1787).  Moreover, Defendant Palafox submits that on September 16, 2019, while Rudnick was still on direct examination, Mr. Schiess and Mr. Bakken had a brief conversation in the hallway outside of the courtroom. (Mot. 6:10–12).  At that time, Mr. Schiess asked Mr. Bakken whether he and Mr. Fleming interviewed Rudnick at his house and whether the interview had been recorded. (*Id.* 6:12–7:2); (Bakken Decl.¶¶ 5–6, Ex. 6 to Mot., ECF No. 1855-6).  Mr. Bakken answered "no" to both questions. (Bakken Decl. ¶ 5). Defendant Palafox contends that Mr. Schiess's questions "clearly indicate the government's knowledge of a Rudnick/Fleming/Bakken meeting in November 2017." (Mot. 6:12–14).

The Government responds that Defendant Palafox cannot prevail on his *Napue* claim because the Government "did not know, and could not have known, that Rudnick's testimony

was false at the time it called Rudnick to testify." (Resp. to Mot. ("Resp.") 15:4–6, ECF No. 1875). The Government explains as follows:

> Before testifying, Rudnick had denied three times that he had met with Mr. Fleming—once to Investigator Grimm on December 14, 2017, and twice during separate preparation meetings conducted after trial began. The nature of [Mr. Fleming's] December 15, 2017, discovery demand letter was equivocal on whether a meeting took place. After the August 2, 2018, detention hearing, the government sought reciprocal discovery based on representations that Mr. Fleming and Mr. Bakken had interviewed Rudnick. And after opening statements, the government . . . twice asked Rudnick in pretrial preparations sessions if he had met the Mr. Fleming and Mr. Bakken, and he consistently denied having done so.

(*Id.* 15:6–14); (*see* Han Decl., Attach. D to Resp., ECF No. 1875-4); (Batson Decl., Attach. E to Resp., ECF No. 1875-5); (Grimm Investigative Note, Attach. C to Resp., ECF No. 1875-3). The Government further argues that a *Napue* violation did not occur because the jury was promptly notified that Rudnick had provided false testimony, and once cross examination resumed, "the government did not object a single time," thereby "allowing defense counsel to explore Rudnick's false statements and develop their case as much as possible." (*Id.* 16:18–17:13).

Upon review of the relevant filings and the parties' respective arguments, the Court finds that Defendant Palafox has not shown that the Government knew or should have known that Rudnick's September 18, 2019 testimony was false. Defendant Palafox cites, *inter alia*, court filings and proceedings wherein a meeting with Rudnick is mentioned. However, as the Government explains in its Response, those references provide little information about a meeting with Rudnick. (Resp. 6:14–8:4). For example, Mr. Fleming's December 15, 2017 letter, (ECF No. 527-1), merely states: "Mr. Lopez's defense team has interviewed Mr. Rudnick several times. . . . All of Mr. Rudnick's statements were made with at least two members of our defense team present, and always included our investigator, Scott Bakken, a

retired FBI Special Agent[.]" (Dec. 15, 2017 Letter at 2–3).  The letter does not specify the date or place of any meeting or whether Mr. Fleming was in attendance.  The remarks made by Mr. Fleming during Defendant Lopez's August 2, 2018 detention hearing provide little additional information.  Mr. Fleming only stated that he and Mr. Bakken had "[driven] to where Gary Rudnick lives" and "met" Rudnick.

What is more, when presented with allegations regarding the face-to-face meeting, the Government investigated.  A prosecutor is required to act "when put on notice of the real possibility of false testimony.  This duty is not discharged by attempting to finesse the problem by pressing ahead without a diligent and a good faith attempt to resolve it." *Com. of N. Mariana Islands v. Bowie*, 236 F.3d 1083, 1090–91 (9th Cir. 2001).  Indeed, "[a] prosecutor cannot avoid this obligation by refusing to search for the truth and remaining willfully ignorant of the facts." *Id.*  Here, the Government carried out this obligation.  The Government filed a Motion to Compel Reciprocal Discovery, (ECF No. 1002), based in part on Mr. Fleming's statements.  However, the discovery obtained as a result of the Motion to Compel did not include any additional information about a meeting with Rudnick. (*See* Resp. 16:1–4).  In addition, on more than one occasion, the Government asked Rudnick whether he met with Mr. Fleming and Mr. Bakken in person.  But Rudnick only admitted having telephonic contact and denied attending a meeting.  Further, while the Government acknowledges that a conversation took place between Mr. Schiess and Mr. Bakken on September 16, 2019, the conversation does not demonstrate that the Government knew Rudnick's testimony regarding the face-to-face meeting was false.  Rather, it appears that this was another Government attempt to obtain details regarding the meeting.  As such, Defendant Palafox has not demonstrated that the

Government knew or should have known that Rudnick's testimony was false at the time it called Rudnick to testify, and therefore, Defendant Palafox's *Napue* claim must fail.<sup>3</sup>

The Court also agrees with the Government's assertion that Rudnick's false testimony was corrected, and thus, no *Napue* violation occurred. As Defendant Palafox's Motion correctly points out, a criminal defendant's due process rights are violated when the Government fails to correct the record when false evidence is presented. *Napue v. Illinois,* 360 U.S. 264, 269–70 (1959). However, at the time Defendant Palafox filed the instant Motion—that is, the early morning hours of September 19, 2019—the Government had not yet informed the jury that Rudnick had provided false testimony. It was not until later that afternoon, once trial resumed, that Mr. Han presented the following stipulated statement to the jury: "The government agrees and stipulates that on November 28th of 2017, Gary Rudnick had a face-to-face meeting with Defense Attorney Mark Fleming and Mr. Scott Bakken which last[ed] over two hours." (Tr. 78:14–18, ECF No. 1859). Thus, Rudnick's false testimony was corrected only one day after he provided it, and no other testimony was presented to the jury during that time. Furthermore, the Government's stipulated statement was the last thing the jury heard before Mr. Fleming resumed cross-examining Rudnick. *Cf. United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000) (reversing a defendant's conviction and explaining that "[b]ecause the prosecutor delayed the correction until rebuttal argument, the defense could no longer explain why the [witness's] lie . . . was important.").

Nevertheless, Defendant Palafox's Reply maintains that the Government has not cured Rudnick's false testimony because "the jury was never apprised that Rudnick had lied to investigators for years," because Rudnick invoked his Fifth Amendment privilege several times during cross-examination, and because the Government's stipulated statement did not address

---

<sup>3</sup> Having found that Defendant Palafox has not satisfied the second element of a *Napue* claim, the Court need not reach the third element.

the extent of Rudnick's false testimony; "Rudnick falsely denied the meeting 13 times, accompanied by incredulous and caustic laughter." (Reply 7:24–8:27). But these arguments are unpersuasive.

First, Defendant Palafox fails to explain why addressing that "Rudnick had lied to Government prosecutors for years" would be necessary in order to correct Rudnick's false testimony. At issue are Rudnick's untruthful denials of a face-to face meeting with Mr. Fleming and Mr. Bakken. And that is precisely what the stipulated statement was meant to address. Additionally, Rudnick's Fifth Amendment invocations did not preclude Rudnick's false testimony from being corrected. In fact, once cross-examination resumed, Rudnick confirmed that he did meet with Mr. Fleming and Mr. Bakken in November 2017, as demonstrated by the following exchange:

> FLEMING: Mr. Rudnick, *on November the 28th of 2017, at 2:00 in the afternoon, did you sit down and speak to me at a Starbucks?*
> RUDNICK: *Yes*.
> FLEMING: And did that meeting last for over two hours?
> RUDNICK: I don't recall what time, but yes.
> FLEMING: And did we discuss in detail facts about the case?
> RUDNICK: We discussed some stuff about the case.
> FLEMING: I asked you yesterday if you could identify a gentleman who was standing in the courtroom. And I'd ask that gentleman to please stand at this time. Do you recognize the gentleman in the back?
> RUDNICK: Yes, I recognize him.
> FLEMING: And do you recognize him as my defense investigator by the name of Scott Bakken?
> RUDNICK: Yes, I do.
> FLEMING: *And was Mr. Bakken present with us throughout the entirety of the interview?*
> RUDNICK: *Yes, he was*.
> FLEMING: And do you remember yesterday I asked you the exact same question?
> RUDNICK: Yes, you did.
> FLEMING: Was your answer, in response to my question . . . "Q: Have you ever seen this man before?" Your answer: "A: No, I've never seen that gentleman." That's what you said; right?

>   RUDNICK:  Yes.
>   FLEMING:  When you said that, you were under oath; correct?
>   RUDNICK:  Yes.
>   FLEMING:  *You lied, didn't you?*
>   RUDNICK:  *Yes.*

(Tr. 78:22–80:11, ECF No. 1859) (emphasis added).  Thus, not only did Rudnick confirm the November 28, 2017 meeting, but he also expressly acknowledged that he lied under oath when previously asked about the meeting.  Furthermore, defense counsel had the opportunity to question Rudnick regarding the laughter which accompanied his false testimony.

>   FLEMING:  Do you remember laughing yesterday when I was asking you these questions?
>   RUDNICK:  Yes, I was.
>   FLEMING:  And you thought it was really funny, didn't you?
>   RUDNICK:  Yes.
>   FLEMING:  Okay. *Do you still think it's funny?*
>   RUDNICK:  *No.*

(Tr. 91:18–24, ECF No. 1859) (emphasis added).  Thus, Defendant Palafox's assertion that Rudnick's false testimony has not been corrected is without support.

In sum, it is Defendant Palafox's burden to establish a claim under *Napue*, and this he has not done. *See Zuno–Arce*, 339 F.3d at 889.  Accordingly, Defendant Palafox's Motion in Limine for Evidentiary Hearing to Establish and End the Government's *Napue* Violations, (ECF No. 1855), is **DENIED**.

///

///

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Pastor Palafox's Motion in Limine for Evidentiary Hearing to Establish and End the Government's *Napue* Violations, (ECF No. 1855), is **DENIED**.

**DATED** this __14__ day of February, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court